IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

CAMERON LEE RUSSELL, JR.,

Defendant.

CR 24-135-BLG-SPW

ORDER

On November 15, 2024, Defendant Cameron Lee Russell Jr., moved to dismiss the indictment charging him with receiving a firearm while under indictment for a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(n) based on the United States Supreme Court's decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and *United States v. Rahimi*, 602 U.S. 680 (2024). (Doc. 16; Doc. 17 at 2). Russell argues that § 922(n) is unconstitutional facially and as applied to him. (Doc. 17 at 2).

The Government responded on November 29, 2024, arguing that the Court should deny Russell's motion. (Doc. 24). First, because *Bruen* did not overrule prior precedent regarding gun ownership prohibitions on certain persons since "*Heller* is not 'clearly irreconcilable with the reasoning or theory of intervening higher authority [*Bruen*, in this instance].'" (*Id.* at 6 (citing *United States v. Boyd*,

1

1:20-CR-121-DLC-1 at *6 (D. Mont. Jan. 25, 2023))).  Second, the Government argues that the holding in *United States v. Perez-Garcia* affirmed the presumptive constitutionality of regulations like § 922(n).  (*Id.* at 10) (citing 96 F.4[th] 1166 (9th Cir. 2024)).

Russell did not file a reply.

For the following reasons, the Court denies Russell's motion.

## I.    Factual Background

According to the Government, on January 23, 2024, Russell was charged with a felony for obstructing justice under Mont. Code Ann. § 45-7-303.  (*Id.* at 2). Russell entered a not guilty plea on March 5, 2024, and signed a release order that precluded him from possessing firearms.  (*Id.* at 2–3).

On March 28, 2024, Bureau of Indian Affairs ("BIA") officers responded to reports of an assault on U.S. Highway 212 on the Northern Cheyenne Indian reservation.  (*Id.* at 2).  As BIA officers arrived, they observed a vehicle parked on the side of the road, and as they walked toward the vehicle, Russell approached the officers with his hands up.  (*Id.*).  Russell was detained at the scene and placed in the back of a patrol vehicle.  (*Id.*).  BIA officers then spoke to the alleged victim, Jane Doe, who stated that Russell struck her with the butt of a rifle, and then fired the rifle at her.  (*Id.* at 2–3).  Officers located the rifle underneath the vehicle, and arrested Russell.  (*Id.* at 3). Russell later admitted that he had been in possession of the

firearm at the time of the assault. (*Id.*). On September 19, 2024, Russell was indicted under § 922(n) for receiving a firearm while under indictment. (Doc. 1).

## II.    Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) provides that a party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits. A pretrial motion is proper when it involves questions of law rather than fact. *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). The Court has determined Russell's motion is appropriate for pretrial resolution because it solely involves a question of law.

## III.    Analysis

Under § 922(n), "it shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

Russell claims that in light of *Bruen* and *Rahimi*, § 922(n) violates the Second Amendment facially and as applied to him, and the charge should be dismissed. (Doc. 17 at 4–5). Russell argues that under the new framework: (1) his alleged conduct falls within the plain text of the Second Amendment and (2) § 922(n) is unconstitutional because the Government cannot show that the statute is consistent with the Nation's historical tradition of firearm regulation. (*Id.* at 4–5).

The Government disagrees.  The Government argues that courts within this district have concluded that *Bruen* did not effectively overrule prior precedent regarding gun ownership prohibitions because Ninth Circuit caselaw applying *Heller* is not "clearly irreconcilable with the reasoning or theory of [*Bruen*]," and Russell's challenge is foreclosed by relevant precedent.    (Doc. 24 at 6).  Alternatively, the Government reasons that the Ninth Circuit's post-*Bruen* holdings upheld the constitutionality of § 922(n), finding that the statute is consistent with the Nation's historical tradition of firearm regulation.  (*Id.* at 10 (citing *Perez-Garcia*, 96 F.4th 1166).

To prevail on a facial challenge, Russell must demonstrate that "no set of circumstances exists under which the [statute] would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  Courts facing simultaneous as-applied and facial challenges ordinarily first resolve the as-applied challenge before addressing the facial challenge.  *Bd. of Trustees of St. Univ. of N.Y. v. Fox*, 492 U.S. 469, 485 (1989).  The as-applied challenge is considered first, and if unsuccessful forecloses the facial challenge.  *United States v. Youngblood*, 2024 WL 3449554 at *6 (D. Mont. July 17, 2024).  Therefore, this court will consider the as-applied challenge first, and then if successful will consider the facial challenge.

4

### A.    Ninth Circuit Precedent

"This Court is bound by Ninth Circuit precedent unless that precedent is 'effectively overruled,' which occurs when 'the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority.'" *United States v. Butts*, 637 F. Supp. 3d 1134, 1138 (D. Mont. 2022) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003)). "The clearly irreconcilable requirement is a high standard." *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (quotation marks omitted). "[I]t is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent." *Id.* (quotation marks omitted). As long as the court "can apply our prior circuit precedent without running afoul of the intervening authority" it must do so. *United States v. Robertson*, 875 F. 3d 1281, 1291 (9th Cir. 2017) (quoting *Lair v. Bullock*, 697 F. 3d 1200, 1207 (9th Cir. 2012)).

In 2022, the Supreme Court decided *Bruen* finding that the Second Amendment's plain text, coupled with a historical analysis of our Nation's gun regulation traditions, protects an individual's right to carry a handgun for self defense. *Bruen*, 597. U.S. at 17, 28–29. The Court rejected the means-end scrutiny tests previously applied by appellate courts, holding instead that courts must apply "[t]he test set forth in *Heller*" to "assess whether modern firearms regulations are

5

consistent with the Second Amendment's text and historical understanding." *Id.* at 26 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)). "*Bruen* did not overrule prior precedent regarding gun-ownership prohibition when the basis for the prohibition arose from the application of *Heller.*" *United States v. Hamlin*, CR-23-08-H, 2023 WL 6481146, *4 (D. Mont. Oct. 5, 2023). The *Bruen* Court held that a court must apply "[t]he test that we set forth in *Heller*" and "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen*, 597 U.S. at 56 (citing *District of Colombia v. Heller*, 554 U.S. 570 (2008)).

   In 2023, this Court considered the constitutionality of § 922(n) under a *Bruen* challenge. *United States v. Stennerson*, CR 22-139-BLG, 2023 WL 2214351 (D. Mont. Feb. 24, 2023). This Court found that *Bruen* did not effectively overrule prior precedent regarding gun-ownership prohibitions because *Heller* and Ninth Circuit caselaw applying *Heller* is not "clearly irreconcilable" with *Bruen*. *Id.* at *1. Specifically, this Court found that the Ninth Circuit's decisions in *Vonxgay* and *Dugan*, which upheld § 922(g)(1) and § 922(g)(3), respectively, against a Second Amendment challenge, remained good law following *Bruen* because the Ninth Circuit applied *Heller* in reaching their decisions. *Id.* at *2 (citing *United States v. Vonxgay*, 594 F. 3d 1111, 1118 (9th Cir. 2011); *United States v. Duggan*, 657 F.3d 998, 999-1000, (9th Cir. 2011)). Based on the decision in *Vonxgay*, this Court found

that § 922(n) is constitutional because "although § 922(n) has not been squarely addressed in the caselaw, the prohibition on persons under indictment from acquiring firearms is underpinned by the same considerations as [prohibitions on] felons in possession: each stand for the principle that unvirtuous persons [may] be disarmed." *Id.* (citing *Vonxgay*, 594 F.3d at 1118). Accordingly, this Court will adhere to its previous decisions and uphold § 922(n)'s constitutionality.

Be that as it may, the Court recognizes that "*Bruen* effected a sea change in Second Amendment law." *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1041 (4th Cir. 2023). Though this Court finds that the *Stennerson* decision forecloses Russell's challenge, Russell asks the Court to consider the constitutionality of § 922(n) under the *Bruen* and *Rahimi* framework. (Doc. 17 at 3). Provided the "sea change in Second Amendment law," the Court will consider the parties' arguments under the new framework. *See Moore*, 86 F.4th at 1041.

    *B.*    Bruen *and* Rahimi *Analysis*

The "ever-evolving 'history-and-tradition' test outlined in *Bruen* and modified" by the Court's decision earlier this year in *United States v. Rahimi* "requires a two-step analysis to determine whether a law complies with the Second Amendment." *United States v. Youngblood*, __ F. Supp. 3d__ 2024 WL 3449554, at *3 (D. Mont. 2024) (citing 144 S. Ct. at 1926–27 (Jackson, J., concurring)). First, if "the Second Amendment's plain text covers an individual's conduct, the

7

Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. Second, to regulate protected conduct, the government must show that its regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id.* This historical analysis requires courts to pay close attention to "[w]hy and how the regulation burdens the right." *Rahimi*, 602 U.S. at 692. In doing so, "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'" *Id.* (quoting *Bruen*, 597 U.S. at 29); *see also Bruen*, 597 U.S. at 30 (requiring the government to "identify a well-established and representative historical *analogue*, not a historical *twin*.") (emphasis in original).

### 1.    Plain Text

Considering the first step of the *Bruen* test, neither party presents a substantive argument on whether Russell's conduct is covered by the Second Amendment's plain text. Russell simply states that his "conduct in possessing a firearm under Section 922(n) is protected under the Second Amendment's guarantee." (Doc. 17 at 4).

Long guns, such as rifles, are undoubtedly protected under the plain text of the Second Amendment. *See Rahimi*, 61 F.4th 443, 453 (5th Cir. 2023). Further, the Ninth Circuit recently held that pretrial releasees are members of the national community and, therefore, fall within the plain meaning of "the people." *Perez-*

*Garcia*, 96 F. 4th at 1180 (citing *Heller*, 554 U.S. at 580). Finding that while well-founded criminal accusations can limit individuals' rights, "it is another thing entirely to say that a criminal defendant loses their ability to challenge the condition itself under the Second Amendment." *Id.* (citing *U.S. v. Salerno*, 481 U.S. 739, 747 (1987)). Concluding that allowing the government to exclude an entire group of individuals from "the people" through mere accusation would be inconsistent with the presumption of innocence. *Id.* (citing *U.S. v. Scott*, 450 F. 3d 863, 874 (9th Cir. 2006). Therefore, Russell is part of the "people" protected under the Second Amendment. Accordingly, Russell satisfies the first step of the *Bruen* test.

### 2.    Historical Analogues

Since we conclude that the Second Amendment protects Russell's proposed course of conduct, the Government bears the burden of proving that § 922(n) is consistent with our Nation's "historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17.

Russell argues that the Government cannot show that § 922(n) is constitutional as applied to him because the statute is inconsistent with the Nation's historical tradition of firearm regulation. (Doc. 17 at 5). Russell argues that *Rahimi* does not support upholding § 922(n) because the holding focused on individuals who were found to be a credible threat to the physical safety of another, and under § 922(n), there is no mechanism for a court to determine that a person presents such a

threat. (*Id.* at 6). Further, the underlying charge against Russell was non-violent, and no determination was made that Russell was a credible threat to another. (*Id.*).

In response, the Government argues that § 922(n) is consistent with the Nation's historical tradition of disarming pretrial detainees. (Doc. 24 at 10). The Government asks the Court to borrow historical evidence from the Ninth Circuit's decision in *Perez-Garcia*, which found the Bail Reform Act's temporary disarmament of pretrial detainees facing felony charges to be consistent with the "historical tradition of firearm regulation." (*Id.*).

The Court will first address whether there must be a judicial determination that Russell presented a credible threat to disarm him under *Rahimi* and then whether this Court should adopt the reasoning of the *Perez-Garcia* court.

### a. Rahimi

The essential inquiry for the second prong of the *Bruen* test is whether the modern regulation is relevantly similar to historical laws and tradition. *Bruen*, 597 U.S. at 29. The government does not have to identify a "historical twin"; it must just identify a "well-established and representative historical analogue." *Id.* at 30. The central consideration in this analysis is whether, when compared to a modern regulation, the historical precedent imposed a "comparable burden" on the right of armed self-defense. *Id.* at 29.

In *Rahimi*, the Supreme Court considered the constitutionality of 18 U.S.C. § 922(g)(8), which prohibits an individual from possessing a firearm if they are subject to a domestic violence restraining order that includes a finding that the individual "represents a credible threat to the physical safety of [an] intimate partner." 144 S. Ct. at 1891. The Court stated that the proper analysis is determining if the challenged regulation is consistent with the principles that underpin our regulatory tradition. *Id.* at 1898. "If laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations." *Id.* The Court found that our tradition of firearm regulation allows the government to disarm individuals who present a credible threat to the safety of others, and therefore § 922(g)(8) is constitutional. *Id.* at 1902.

Based on *Rahimi*, Russell argues that the Government has the burden of proving that he was a credible threat to the physical safety of another when he possessed a firearm while under indictment. (Doc. 17 at 6). This argument misconstrues the holding of *Rahimi*. The inquiry under *Rahimi* is whether the challenged regulation is analogous to the Nation's history of firearm regulation. *Rahimi*, 602 U.S. 692. Russell is being prosecuted under § 922(n), which prohibits an individual under indictment for a felony from receiving or transporting a firearm. (Doc. 2). Rahimi was prosecuted under § 922(g)(8) which prohibits possession of a

11

firearm when there is a judicial determination that the individual presents a credible threat to the safety of others. These are two different statutes that require two different historical inquiries. Under the logic of *Rahimi*, the proper inquiry for this Court is whether our Nation's tradition of firearm regulation allows the government to prevent individuals under indictment for a felony from receiving or transporting a firearm.

### b. Perez-Garcia

In *Perez-Garcia*, the court considered whether § 3142(c)(1)(B)(viii) was consistent with the Nation's "historical tradition of firearm regulation. Under § 3142(c)(1)(B)(viii), defendants granted pretrial release are prohibited from possessing a firearm, destructive weapon, or other dangerous device. The court categorized this Second Amendment restriction as a "complete, albeit temporary and individually tailored, prohibition on the right to bear arms." *Perez-Garcia*, 96 F.4th at 1182. Further, the court found that the purpose behind the firearm condition is to "reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* (quoting 18 U.S.C. § 3142(c)(1)(B)). Public safety is the foremost consideration behind this condition, but risk of flight also plays a role in its imposition. *Id.* (*see Salerno,* 481 U.S. at 753).

Under § 922(n), a defendant under indictment for a felony is prohibited from receiving or shipping a firearm. These statutes are not identical, as § 922(n) only

prohibits indicted defendants from receiving or shipping weapons, not from possessing firearms. Though the statute in *Perez-Garcia* is broader than § 922(n), this Court agrees with the Government that the two statutes are comparable for the purposes of finding historical analogues from the founding era because both statutes temporarily restrict the Second Amendment rights of felons awaiting trial. And, like the Bail Reform Act, the purpose of the Gun Control Act is to promote public safety by removing guns from persons Congress believed to be dangerous. *United States v. Pruner*, 606 F.2d 871, 874 (9th Cir. 1979); *United States v. Haddad*, 558 F.2d 968, 972 (9th Cir. 1977). Therefore, this Court will take guidance from the Ninth Circuit's historical analysis of § 31412(c)(1)(B)(viii) in *Perez-Garcia*.

Through their historical inquiry, the *Perez-Garcia* court found that since its founding the government has been empowered to detain criminal defendants while awaiting trial. *Id.* (citing U.S. Const. amend. V (providing that a person may be "held to answer for a capital, or otherwise infamous crime ... on a presentment or indictment of a Grand Jury")); Act of Sep. 24, 1789, ch. XX § 33, 1 Stat. 73, 91 ("[F]or any crime or offence against the United States, the offender may ... be arrested, and imprisoned."). But that pretrial release was far rarer in the founding era because in that time defendants facing capital charges were not permitted to be released pending trial, and most serious criminal acts and felonies constituted capital offenses. *Id.* at 1183 (*See e.g.*, Pa. Const. ch. ii, § 28 (1776) ("All prisoners shall be

bailable by sufficient sureties, unless for capital offences, when proof is evident, or presumption great."); N.C. Const. Art. XXXIX (1776); Vt. Const. ch. II, § 25 (1777); An Ordinance for the Government of the Territory of the United States Northwest of the River Ohio (1787) § 14, art. 2, 2 *Laws of the United States of America* 559, 564 (1797); *cf.* 4 William Blackstone, *Commentaries* *294 ("[I]n felonies, and other offences of a capital nature, no bail can be a security equivalent to the actual custody of the person."). Capital crimes in the founding era consisted of a broad set of offenses. Most serious crimes and felonies were eligible for capital charges because "death was the standard penalty for all serious crimes at the time of the founding." *Id.* (citing *Bucklew v. Precythe*, 587 U.S. 119 (2019). In the pre-Revolutionary era, Blackstone described this practice, writing, "[t]he idea of felony is indeed so generally connected with that of capital punishment, that we find it hard to separate them." *Id.* (citing 4 William Blackstone, *Commentaries*, *98). Pretrial detention in the founding era involved total disarmament, as one 19th century Supreme Court justice observed, "[p]ersons accused of a crime, upon their arrest, have constantly been divested of their arms, without the legality of the act having ever been questioned. *Id.* (quoting *State v. Buzzard*, 4 Ark. 18, 21 (1842).

Russell's underlying charge being for a non-violent felony is irrelevant under this historical analysis. Since "at the time of the Second Amendment's ratification...nonviolent crimes such as forgery and horse theft were capital

offenses." *Id.* (*see Medina v. Whitaker*, 913 F.3d 152, 158 (D.C. Cir. 2019). In conclusion, the historical record demonstrates a tradition of disarming criminal defendants facing felony charges pending trial whether violent or non-violent.

*Bruen* then required the Court to consider whether the Nation's historical tradition of disarming serious felons facing trial is "relevantly similar" to the Bail Reform Act's prohibition on persons under indictment for a felony possessing firearms. *Id.* at 1184. Both regulations must align as to "how and why [they] burden a law-abiding citizen's right to armed self-defense. *Id.* The Court in *Perez-Garcia* found that the Bail Reform Act's pretrial release condition was relevantly similar to the founding era tradition of disarming criminal defendants facing serious crimes for two reasons. First, the historical tradition imposed a comparable burden on defendant's Second Amendment rights as the Bail Reform Act's pretrial condition does today. *Id.* (citing *Bruen*, 597 U.S. 1 at 29). Both statutes allow for the complete but temporary disarmament of criminal defendants awaiting trial for serious crimes. *Id.* Second, the modern and historical firearm restrictions are "comparably justified" as the purpose of both is to protect the public from future criminal acts of the accused. *Id.* (*Compare* A. Highmore, *A Digest of the Doctrine of Bail: In Civil and Criminal Cases*, vii (1783) (explaining that pretrial detention in the late 18th century ensured that "the safety of the people should be preserved against the lawless depredations of atrocious offenders"), *with Salerno*, 481 U.S. at 750, 107 S.Ct. 2095

(noting that the purpose of the Bail Reform Act was to respond to "the alarming problem of crimes committed by persons on release," and holding that the Government has a "compelling" and "heightened" interest in preventing crime and arrestees from presenting a "demonstrable danger to the community" (citation omitted)).

As the historical evidence in *Perez-Garcia* demonstrates, there is ample evidence that the temporary disarmament of criminal defendants facing both violent and non-violent felony charges is rooted in this Nation's history. The weight of both the historical evidence and Supreme Court precedent demonstrates the constitutionality of 18 U.S.C. § 922(n) as applied to Russell under the *Bruen* and *Rahimi* framework.

Since, § 922(n) is constitutional as applied to Russell, it is also facially constitutional because Russell has not demonstrated that "no set of circumstances exists under which the [statute] would be valid." *See Salerno*, 481 U.S. at 745.

## IV.    Conclusion

IT IS SO ORDERED that Defendant Cameron Lee Russell Jr.'s Motion to Dismiss (Doc. 16) is DENIED.

DATED this __7th__ day of January, 2025.

SUSAN P. WATTERS
United States District Judge

16